IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

EVAN AMBER OVERTON AND
JOHN KEENAN OVERTON, CO-
ADMINISTRATORS FOR THE ESTATE
OF EZRA MICHAEL OVERTON,
DECEASED,

                                                                                                                              Case No.: 1:19-cv-751

      Plaintiffs,

**v.**

FISHER-PRICE, INC;

AND

MATTEL, INC.

      Defendants.

## PLAINTIFFS' FIRST INTERROGATORIES, REQUEST FOR PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION AND THINGS, AND REQUESTS FOR ADMISSION TO DEFENDANTS

### INSTRUCTIONS

(a)     With respect to documents, electronically stored information and things, expressly designate the request to which each document, information or thing is responsive.

(b)  If objection is made to a part of a particular request, that part shall be specified and documents produced for all parts of the request to which objection is not made.

(c)  As to each document or part of a document withheld from production on any ground, state:

(1) The type of document;

(2) The subject matter of the document;

(3) The identity of the person who authored the document;

(4) The identity of the addressee of the document;

(5) The date of the document or the approximate date of its preparation;

(6) The present location and custodian of the original document; and

(7) The grounds on which such document is being withheld from production and inspection (including any privilege asserted and the facts giving rise to the asserted privilege).

(d)  In responding to these requests, please furnish all information available to you or within your control, including any information in the possession of agents, attorneys, contractors, subcontractors, former employees, officers, members, or any other person acting on your behalf.

## DEFINITIONS

(a) The terms "you," "your," "Fisher-Price" and "Mattel" shall refer respectively to the defendants, including any and all subsidiaries, predecessors, affiliates, successors, and all officers, directors, attorneys, consultants, employees, and agents thereof.

(b) "Rock 'n Play" shall refer to all models of the Fisher-Price Rock 'n Play inclined sleeper.

(c) "SnugaMonkey" shall refer to the Fisher-Price my little SnugaMonkey Deluxe Rock "n Play Sleeper, Model No. BGB20, as shown in Figure 4 of the Complaint.

(d) "Ezra" shall refer to the Plaintiff's decedent, Ezra Michael Overton, and "Ezra's parents" shall refer to Evan Amber Overton and John Keenan Overton.

(e) "Incident" shall refer to Ezra's death by suffocation on or about December 21, 2017 as described in the Complaint.

(f) "Ezra's Sleeper" shall refer to the SnugaMonkey in which Ezra was sleeping when he died.

(g) "CPSC" shall refer to the Consumer Product Safety Commission.

(h) "JPML" shall refer to the Juvenile Products Manufacturers Association.

(i) "ASTM International" shall refer to the international standards organization formerly known as American Society for Testing and Materials.

(j) "AAP" shall refer to the American Association of Pediatricians.

(k)     "Alert" shall refer to alerts and/or warnings issued by you, by the CPSC and/or by you and the CPSC concerning or related to Rock 'n Play sleepers.

(l)     "Recall" shall refer to any and all recall of any type regarding or concerning the Rock 'n Play.

(m)     "The Recall" shall refer to the April 12, 2019 Recall of all models of Rock 'n Play Sleeper."

(n)     "Similar occurrences" shall refer to incidents where a child was injured or killed, or where it was alleged that a child was injured or killed, as a result of being in a Rock 'n Play sleeper.

(o)     The term "document" includes (but is not limited to) any written, printed, typed, photocopied, photographed, recorded, electronically stored (including but not limited to magnetic, mechanical, or electronic recordings), or otherwise information, data, reproduced communication or representation.  This definition includes (but is not limited to) correspondence, memoranda, wires, cables, studies, maps, analyses, diagrams, electronically stored information, electronic mail, scraps of paper, notes, text messages, social media, applications, drawings, charts, graphs, plans, plats, photographs, video recordings, audio recordings, computer disks, working papers, drafts, reports of investigations or inspections of any kind, diaries, minutes, calendars, invoices, journals, bills, orders, time slips or records, books, computations, field notes, logs, financial records or statements, or work papers, checks, receipts, bank statements, and the like.  Data compilations from which information may be translated into usable form (e.g., computer memory) are also

included. The definition includes, as a separate document, each duplicate or reproduction or copy of a document that contains any non-conforming note, marking, material, or attachment. If it is maintained that any document requested to be identified has been destroyed or is otherwise no longer within your possession or control, identify the document and state the date, place, and manner of its destruction or removal from your control, and identify the person who authorized or ordered such destruction or removal.

(p) "Person" includes individuals, agencies, government entities, corporations, partnerships, unincorporated associations, and other business entities, and specifically includes the plaintiff and defendants in this action, and includes any predecessors or successors in interest.

(q) The terms "identify," "identity," "describe," and "detail" when used in connection with a person mean:

>   (1) Where the person is an individual, to state the person's full name, home address, home telephone number, business address, business telephone number, and business or other affiliation, and

>   (2) Where the person is not an individual, to state the full name of the entity, the nature of the entity, address and telephone number of the entity, and such additional identifying information as may be necessary to enable the "person" to be contacted.

(r) Use of the singular tense shall be deemed to include the plural and <u>vice versa.</u> Use of either the masculine or feminine pronoun shall be deemed to

include both genders. "And" as well as "or" shall be construed either disjunctively or conjunctively so as to permit the inclusion of materials or information otherwise excluded.

## INTERROGATORIES

1. Identify every model of Rock 'n Play and describe the differences, if any, between and among models. State in your response whether such model was ever marketed as "designed for all-night sleep," and, if so, state the time period during which said model was so marketed.

   **ANSWER**:

2. Identify all people involved in the design of the Rock 'n Play and each component and model thereof. Separately identify each person involved in any and all re-designs of the Rock 'n Play or of any component thereof.

   **ANSWER**:

3. Did you solicit opinions, advice or consultation from any medical doctors, experts in safe infant sleep, ergonomics experts or other experts prior to marketing the Rock 'n Play? If so, identify (including area of specialty) each such person, and identify and produce all documents regarding or concerning each such person's consultation.

   **ANSWER**:

4. Identify the manufacturer of the Rock 'n Play and, if different from the manufacturer, the Chinese company from whom you imported the Rock 'n Play. Include with your response the identity all people at the manufacturer and importer with whom you communicated about the design and/or manufacture of the Rock 'n Play.

ANSWER:

5. Before marketing any model Rock 'n Play as "designed for all-night sleep," what, if anything, did you do to determine that the Rock 'n Play was safe for all-night sleep? Include in your answer, a detailed description of everything you did, the identity of every person upon whom you relied, a detailed description and the identity of all studies, testing and/or medical literature upon which you relied, and the identity of all persons who ultimately decided that the Rock 'n Play was safe for all-night sleep.

ANSWER:

6. Identify each product safety committee or safety group in your company or corporate family whose function, task or responsibility at any time was to analyze, study or consider the risks or hazards of suffocation or asphyxiation relating to or concerning the Rock 'n Play. Include in your response the identity of each person on such committee or in such group and the identity, custodian and location of all documents regarding or concerning such analyses, studies or considerations.

ANSWER;

7. What is the angle of incline of the SnugaMonkey when the product is at rest?

ANSWER:

8.  Please describe in detail the circumstances and location of and the reasons for all instances in which you or anyone on your behalf videotaped and/or photographed a baby or infant in a Rock 'n Play. As part of your response, identify all persons present during the videotaping and/or photographing of each such baby; describe all tests that were conducted in association with the videotaping of each such baby or infant; identify all babies who were videotaped and/or photographed; state whether any baby or infant was captured on video or photographed standing while restrained; and identify and produce all documents concerning or related to such videotaping, photographing and testing.

ANSWER:

9.  Identify by name of victim, name of victim's caregiver(s), date of occurrence, model of Rock 'n Play, style of legal case, venue where legal case filed, and name of plaintiff's counsel every injury or death involving suffocation or asphyxiation while in a Rock 'n Play sleeper. In addition, please identify all documents in your possession or control concerning or regarding each such occurrence.

ANSWER:

10. Identify all standards, laws and regulations that you contend apply to the design of and warnings on Rock 'n Play sleepers.

ANSWER:

11. Reproduce or produce all statements by or on behalf of Plaintiffs concerning the incident, Ezra and/or Ezra's sleeper. Objection will be made at trial to any such statement not produced.

**ANSWER:**

12. With regard to the April 5, 2019 alert concerning and regarding Rock 'n Play sleepers, please identify each author of the following statement contained in the alert - "According to medical literature, infants typically begin rollover behaviors at 3 months" – and identify by authors, title and publication all medical literature relied upon for that statement.

**ANSWER:**

13. Describe in detail all reasons for The Recall, and identify all persons who made the decision to recall the Rock 'n Play and all documents forming the grounds for the decision to recall the Rock 'n Play.

**ANSWER:**

14. State in detail all facts and identify all persons, documents and things upon which you rely for each of your Affirmative Defenses.

**ANSWER:**

15. Describe in detail, in narrative form, the cause of the incident, stating all facts and identifying all witnesses, documents or things upon which you rely to answer this Interrogatory.

**ANSWER:**

# REQUEST FOR PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION AND THINGS

1. Produce a prototype of each version of the SnugaMonkey sold in the United States from 2009 – the incident.
    **RESPONSE**:

2. All documents responsive to any of Plaintiffs' Interrogatories.
    **RESPONSE**:

3. All documents concerning, regarding or forming a reason for The Recall.
    **RESPONSE**:

4. All documents concerning, regarding or forming a reason for each Alert.
    **RESPONSE**:

5. All packaging, package inserts and warnings for each version of the SnugaMonkey that was sold in the United States from 2009 – the incident.
    **RESPONSE**:

6. All statements by any of the Plaintiffs or their agents concerning or relating to the incident, Rock 'n Play sleepers, Ezra, Ezra's sleeper or the defendants.
    **RESPONSE**:

7. All documents provided to the manufacturer of Rock 'n Play sleepers concerning or relating to the design of the sleepers.

**RESPONSE:**

8. All documents from the manufacturer of Rock 'n Play sleepers concerning or relating to the design of the sleepers.

**RESPONSE:**

9. All documents from, to, in which he is a recipient or that refer to John Deegear, M.D. concerning or relating to inclined infant sleepers, the Rock 'n Play, or hammocks.

**RESPONSE:**

10. All documents upon which you relied prior to first selling Rock 'n Play sleepers in the United States in 2009 that Rock 'n Play sleepers were safe for all-night sleep.

**RESPONSE:**

11. All documents upon which you relied subsequent to first selling Rock 'n Play sleepers in the United States in 2009 that Rock 'n Play sleepers were safe for all-night sleep.

**RESPONSE:**

12. All documents that allege or show that Rock 'n Play sleepers are not safe for all-night sleep.

**RESPONSE:**

13. All documents concerning or related to other incidents involving infants injured or dying while in a Rock 'n Play sleeper. Include in your response all pleadings and discovery with regard to those incidents that resulted in litigation.

**RESPONSE:**

14. Every warning ever contained on any model of the Rock 'n Play. Please indicate the date range that each warning appeared on each model.

    **RESPONSE**:

15. Documents concerning or relating to all surveys, consumer feedback programs or tests concerning or relating to any Rock 'n Play sleeper.

    **RESPONSE**:

16. Documents concerning or relating to the ability of an infant to push him or herself up to a standing position in a Rock 'n Play sleeper.

    **RESPONSE**:

17. Documents concerning or relating to the ability of an infant to rollover while restrained in a Rock 'n Play sleeper.

    **RESPONSE**:

18. Documents concerning or relating to testing or the safety or the efficacy of the Rock 'n Play crotch strap.

    **RESPONSE**:

19. Documents concerning or relating to any and all testing of the SnugaMonkey.

    **RESPONSE**:

20. Documents concerning or relating to any and all testing of the Rock 'n Play models with animal inserts, e.g., the lamb insert.

    **RESPONSE**:

21. Documents concerning or relating to any recall of any model Rock 'n Play or component thereof.

**RESPONSE:**

22. Documents concerning or relating Dr. Deegear's statements and suggestions in an August 19, 2009 conference call regarding the Rock 'n Play sleeper that an infant would have to be at least 3 months old before it could arch its back and push itself up the seat back, and that you could use a stretchy-type mesh material in the foot rest area of the Rock 'n Play to make it more difficult for the infant occupant to push itself up.

**RESPONSE:**

23. Documents showing, concerning or relating to all tests in which an infant (restrained or unrestrained) pushed itself to a standing position in a Rock 'n Play.

**RESPONSE:**

24. Documents concerning or relating to any and all foreign government, agency or other entity concerning or relating to whether the Rock 'n Play was safe or could be marketed for all-sleep; whether the Rock 'n Play should be reclassified as a "soother", or redesign of the Rock 'n Play.

**RESPONSE:**

25. Documents reflecting all design changes to the Rock 'n Play from 2009 through the Recall.

**RESPONSE:**

26. Documents concerning and relating to the CPSC revising its standards for infant sleep surfaces (including bassinets), including documents concerning and relating to your response to the CPSC announcing its planned revisions.

**RESPONSE:**

27. Documents concerning or relating to all pre- and post-marketing consultations with Dr. Deegear about the Rock 'n Play.

**RESPONSE:**

28. Documents concerning or relating to Ezra, the incident, Ezra's sleeper or Ezra's parents.

**RESPONSE:**

29. Documents concerning or relating to communications between you and the AAP about inclined infant sleepers, hammocks and/or the Rock 'n Play.

**RESPONSE:**

30. Documents concerning or relating to the angle of incline of the Rock 'n Play, including the SnugaMonkey, while at rest.

**RESPONSE:**

31. Documents concerning or relating to the safety of infant sleep at the angle of incline at or above the angle of incline of the Rock 'n Play while at rest.

**RESPONSE:**

32. Documents concerning or relating to the risk of suffocation to the occupant of an inclined infant sleeper, hammock or Rock 'n Play, including but not limited from the ability of an infant to push itself up to a standing position, the inability of the crotch strap to prevent an infant from standing or rolling over, and/or hazards posed by the extra padded material from the inserts of certain models including the SnugaMonkey.

**RESPONSE:**

33. Documents concerning or relating to your participation with ASTM International regarding the creation of a voluntary standard for inclined infant sleep products.
**RESPONSE:**

34. All medical literature responsive to any of Plaintiff's Interrogatories or that you reference in your discovery responses.
**RESPONSE:**

35. Documents concerning or relating to infant rollover behavior.
**RESPONSE:**

36. Documents concerning or relating to communication between or among you and the JPML regarding inclined infant sleep products, standards, and/or the Rock 'n Play.
**RESPONSE:**

37. Documents concerning, reflecting or relating to communication between or among you and the CPSC about infant deaths in the Rock 'n Play.
**RESPONSE:**

38. Documents (including patent applications and related documents) concerning or relating to any and all studies or tests designed to decrease the risk of infant suffocation or asphyxiation in the Rock 'n Play or in inclined infant sleepers.
**RESPONSE:**

39. Documents concerning, relating to or containing recommendations or suggestions to prevent or reduce the risk of injury or death caused by an infant sleeping in the Rock 'n Play.
**RESPONSE:**

40. Documents concerning or relating to the risk of an infant suffocating or dying which in a Rock 'n Play.

**RESPONSE**:

41. An organizational flow chart for each defendant.

**RESPONSE**:

42. All documents, discovery, depositions, transcripts, and pleadings associated with *Liliana Coronado Torres, Individually and as Representative of the Estate of Dayana Coronado-Torres and Joes Rigoberto Arias v. Imperial Manufactory Limited Tsuen Lee Metals & Plastic Toys Co., LTD., Fisher-Price, Inc. and Mattel, Inc.*, United States District Court for the Southern District of Texas McAllen Division, Civil File Action Number 7:15-CV-00444.

**RESPONSE:**

43. All design documents for the Rock 'n Play, including schematics, drawings and patents.

**RESPONSE**:

## REQUESTS FOR ADMISSION

1. You first sold the Rock 'n Play in the United States in 2009.
   RESPONSE:

2. You marketed certain models of the Rock 'n Play as "designed for all-night sleep."
   RESPONSE:

3.   You marketed the SnugaMonkey as "designed for all-night sleep."

RESPONSE:

4.   You anticipated that consumers would allow their infants to sleep all-night in the Rock 'n Play.

RESPONSE:

5.   You anticipated that consumers would allow their infants to sleep all-night unattended in the Rock 'n Play.

RESPONSE:

6.   You anticipated that consumers would allow their infants to sleep all-night in the SnugaMonkey.

RESPONSE:

7.   You anticipated that consumers would allow their infants to sleep all-night unattended in the SnugaMonkey.

RESPONSE:

8.   Before the incident, you knew from consumer surveys and other means that caregivers allowed their infants to sleep unrestrained in the Rock 'n Play.

RESPONSE:

9.   Before the incident, you knew that infants who were older than 3 months could push themselves up to a standing position while seated in a Rock 'n Play.

RESPONSE:

10. Before the incident, you knew that infants who were older than 3 months could push themselves up to a standing position while seated in a Rock 'n Play with the crotch strap buckled.

RESPONSE:

Respectfully submitted,

/s/ Michael M. Phelan

Michael G. Phelan, Esq. (VSB No. 29725)
Jonathan M. Petty, Esq. (VBS No. 43100)
Brielle M. Hunt, Esq. (VBS No. 87652)
PHELAN PETTY, PLC.
6641 West Broad Street, Ste. 406
Richmond, VA 23230
804-980-7100- Telephone
804-767-4601 – Facsimile
mphelan@phelanpetty.com
jpetty@phelanpetty.com
bhunt@phelanpetty.com

Jan V. Hinson, Esq. (SC Bar No. 101498,
GA Bar No. 356817)
LAW OFFICES OF JAN V. HINSON, P.C.
330 East Coffee Street
Greenville, SC 29601
864-527-5933 – SC Telephone
877-797-3571 – Facsimile
11175 Cicero Drive, Suite 100
Alpharetta, Georgia 30022
678-242-5208 – Ga Telephone
jan@janhinsonlaw.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was sent via electronic mail and U.S. Mail, first class, postage prepaid, this 16th day of September, 2019, to the following counsel of record:

Stephen T. Fowler, Esq.
Greenberg Traurig, LLP
2101 L St., NW, Suite 1000
Washington, DC  20037
fowlerst@gtlaw.com

Lori G. Cohen, Esq.
Greenberg Traurig, LLP
The Terminus
3333 Piedmont Road, NE
Suite 2500
Atlanta, GA  30305
cohenl@gtlaw.com

Mary-Olga Lovett, Esq.
Greenberg Traurig, LLP
1000 Louisiana Street, Suite 1700
Houston, TX  77002
lovettm@gtlaw.com

*Counsel for Mattel, Inc. and Fisher-Price, Inc.*