

Michael G. Phelan
Attorney
(804) 980-7100
mphelan@phelanpetty.com

November 20, 2019

**Via Electronic Mail**
Stephen T. Fowler, Esq.
Greenberg Traurig, LLP
2101 L St., NW, Ste. 1000
Washington, DC  20037

Lori G. Cohen, Esq.
Greenberg Traurig, LLP
The Terminus
3333 Piedmont Road, NE
Suite 2500
Atlanta, GA  30305

Mary-Olga Lovett, Esq.
Greenberg Traurig, LLP
1000 Louisiana St., Ste. 1700
Houston, TX  77002

>   *Evan Amber Overton and John Keenan Overton, co-administrators for the
>   Estate of Ezra Michael Overton, deceased v. Fisher-Price, Inc. and Mattel, Inc.*
>   U.S.D.C, Eastern District of Virginia, Case No.:  1:19-cv-751 (LMB/TCB)

Dear Counsel:

I write to follow up on our multiple conversations about defendants' discovery production.  We are at the point that plaintiffs are materially prejudiced by defendants' failure to produce documents that defendants agreed to produce.

Please expedite production of the following:

1. **Response to RFPD No. 13** – On November 4, counsel agreed to produce IDI reports, Matter Detail Reports, Case History Reports and all internal documents concerning or related to other infants involving infants injured or dying while in a Rock 'n Play sleeper (not limited to this incident or the SnugaMonkey model). This should include all CPSC Epidemiologic Investigation Reports (EIR) in defendants' possession. [I note that the EIR concerning our Incident was not produced.]  Plaintiffs agreed to drop from RFPD No. 13 the following: "Include in our response all pleadings and discovery with regard to those incidents that resulted in litigation."  Please produce these documents by COB Friday

or we will have to file a motion to compel.  Given the looming deadlines in this case, further delay is simply unfairly prejudicial to Plaintiffs.

       2.    **Date of manufacture of the Decedent's SnugaMonkey Sleeper**- The Date Code on the Sleeper is 00Z5TLD.  Please let us know by the COB Friday the date of manufacture of this sleeper.  Please follow up by supplementing your response to **RFPD No. 5** by producing the packaging for a SnugaMonkey made during the same time period.

We also need to quickly reach an agreement on and receive production of the following in order to avoid involving the Court:

       1.    **Response to RFPD Nos. 3 & 4**. – Producing only publically available recall announcements and media statements is insufficient.  We are entitled to all correspondence between defendants and the CPSC regarding the Recall and for each Alert.

       2.    **Response to RFPD Nos. 7 & 8**– we agree to limit the scope of these Requests to engineering change notices and specification concerning or related to all models of Rock 'n Play Sleeper.

To the extent that you believe that you have already produced the responsive documents, I ask that you identify the Bates Numbers of the documents you believe to be responsive.  I do not believe that the document dumps we received comply with Rule 34, as the documents are neither organized and labeled nor produced as they would be kept in the ordinary course of business.  For example, it is difficult to believe that defendants do not have all "other incident" information kept together.  In this matter, defendants produced a small fraction of OSI documents scattered among other, unrelated documents.  The entire production is like searching for a needle in a haystack. Conversely, Plaintiffs' Response to defendants' RFPDs is organized in labeled file folders.  Please provide the requested material in labeled format.

Thanks.  I look forward to hearing from you soon.

                                      Sincerely,

                                      Michael G. Phelan

Enclosures
cc:    Jan Hinson, Esq. (w/encl.) (Via email only)
        Mr. and Mrs. John Keenan Overton (w/encl.) (Via email only)



Stephen T. Fowler
1 202.530.8587
1 202.261.0462
fowlers@gtlaw.com

November 23, 2019

VIA ELECTRONIC MAIL
Michael G. Phelan, Esq.
Jonathan M. Petty, Esq.
Brielle M. Hunt, Esq.
PHELAN PETTY, PLC
6641 West Broad Street, Ste 406
Richmond, VA 23230
mphelan@phelanpetty.com

VIA ELECTRONIC MAIL
Jan V. Hinson, Esq.
LAW OFFICES OF JAN V. HINSON, P.C.
330 East Coffee Street
Greenville, SC 29601
jan@janhinsonlaw.com

Re:   *Overton, et al. vs. Mattel, Inc. and Fisher-Price, Inc.*

Dear Counsel:

On behalf of Defendants Mattel, Inc. and Fisher-Price, Inc. ("Defendants"), we write to respond to your November 20, 2019 letter ("Letter") regarding Defendants' document productions in the above-referenced action ("Action"). As an initial matter, Defendants disagree with the statements in the Letter that they failed to produce any documents they agreed to produce. As made clear in the parties' Joint Discovery Plan dated September 25, 2019 [Dkt. No. 16], Defendants agreed to "re-produce the document productions made by Mattel and Fisher-Price in the *Goodrich vs. Fisher-Price, Inc.* and *Torres vs. Fisher-Price, Inc. and Mattel, Inc. et al.* cases." *See* Dkt. No. 16, p. 3. Defendants have done this. The parties further agreed that "[a]ny request by Plaintiffs that the prior productions be updated will be discussed in good faith among counsel." *Id.* In response to any such requests, Defendants agreed they would produce any responsive, non-privileged documents to the extent they exist. They may not exist, and we all know that.

Consistent with the agreement of the parties set forth in the Joint Discovery Plan, Defendants' First Production of Documents was produced to Plaintiffs on October 18, 2019 via a FTP link from Defendants' counsel. This first production contained 1,173 documents, totaling 7,644 pages. These documents were described in Defendants' letter to Plaintiffs served on October 17, 2019, and clearly stated the production not only included documents that were produced in the *Goodrich* and *Torres* matters but also additional documents specific to the Overton case were being produced, which are the Epidemiologic Investigation Report ("EIR") Plaintiffs' claim not to have received and the Products Requirements Document. Defendants agreed to produce these additional corporate documents following what it believed to be good faith discussions with Plaintiffs' counsel.

On November 6, 2019, Defendants made a second document production of 826 documents, totaling 4,869 pages as set forth in Defendants' letter of November 6, 2019 to Plaintiffs' counsel.

*Overton, et al. vs. Mattel, Inc. and Fisher-Price, Inc.*
November 23, 2019
Page 2

Defendants' second production of documents included, among other things, all the drafts and correspondence associated with the ASTM standard for the Inclined Sleeper (F3118). Defendants second production of documents to Plaintiffs was made on November 6, 2019 via a FTP link from Defendants' counsel.

Notably, in the less than a two-month period since the parties' Joint Discovery Plan was entered on September 25, 2019, Defendants have produced 1,999 documents, totaling 12,513 pages. Plaintiffs' assertion that Defendants failed to produce any responsive, non-privileged documents that they previously agreed to produce is simply incorrect.

What is clear from the Letter is that Plaintiffs have not taken the time to carefully review the over 12,000 pages Defendants have produced in the Action.[1] Instead, Plaintiffs would prefer that Defendants do their work for them. Indeed, by the Letter, Plaintiffs ask Defendants to "identify the Bates Numbers of the documents [they] believe to be responsive", while at the same time contending the documents have not been produced. *See* November 20, 2019 Letter from Michael G. Phelan to Stephen Fowler, p. 2. While under no obligation to do so, Defendants provide below the Bates numbers for certain documents Plaintiffs have misstated were not produced.

With respect to the specific Requests identified in the Letter, Defendants respond as follows:

1.  **Request No. 13** – The Letter misstates Defendants' response to Request No. 13 in at least two respects. First, the Letter erroneously states that Defendants did not produce the EIR report concerning the incident at issue in the Action. As discussed briefly above, this document was produced on October 17, 2019 with Defendants' first document production and bearing Bates number Mattel-OV0007571 - 0007644. In fact, Defendants' October 17, 2019 letter to Plaintiffs clearly states that documents specific to the Overton case were being produced in addition to the *Goodrich* and *Torres* productions as Defendants had agreed to do. Second, Plaintiffs' letter misstates the agreement of the parties following the November 6, 2019 meet and confer telephone call.[2] To clarify the record, on November 6, 2019 Plaintiffs requested that Defendants produce all documents set out in Plaintiffs' Request No. 13, including all EIR reports, Matter Detail Reports,

---

[1] Plaintiffs' assertion that Defendants' production constitutes a document dump is not well taken. As made clear by the Bates numbers stamped on the documents, Defendants produced "the document productions made by Mattel and Fisher-Price in the *Goodrich vs. Fisher-Price, Inc.* and *Torres vs. Fisher-Price, Inc. and Mattel, Inc. et al.* cases" as they were produced in those actions *per its agreement with Plaintiffs*. *See* Dkt. No. 16., at p. 3. Counsel for Plaintiffs, Jan Hinson, who was counsel in the *Goodrich* matter, has actually had those documents for more than a year prior to this case being filed. Presumably when Plaintiffs requested Defendants reproduce those documents here, it was because they had reviewed and organized those documents as they saw fit and wished to rely on the same production here. Further, had Plaintiffs conducted even a high-level review of the documents produced by Defendants thus far they would recognize that the documents were produced in an organized fashion, largely grouped into categories of documents. That Defendants did not produce the documents in folders organized by topic (which it was certainly under no obligation to do), does not mean that the production does not comply with Fed. R. Civ. P. 34.

[2] The Letter incorrectly states that the parties' discussion took place on November 4, 2019. The discussion took place on November 6, 2019.

*Overton, et al. vs. Mattel, Inc. and Fisher-Price, Inc.*
November 23, 2019
Page 3

Case History Reports and all internal documents concerning or related to other incidents involving infants injured or dying while in a Rock n' Play sleeper. Defendants did not agree to produce the requested documents. Rather, counsel for Defendants stated that we would consider Plaintiffs' request. Plaintiffs' statement that Defendants agreed to produce those documents is flatly incorrect. Notwithstanding Plaintiffs' misrepresentation of the parties' November 6, 2019 discussion, Defendants agree to supplement its production with the EIR reports, Matter Detail Reports, and Case History Reports regarding incidents involving the Rock n' Play Sleeper leading up to and prior to the December 22, 2017 incident at issue in this case to the extent they exist and without waiving any objections. Defendants will produce as many of these supplemental documents as possible by Wednesday, November 27, 2019, and will supplement this production by December 6, 2019, as needed. Defendants are producing these documents without waiving their objections to the admissibility of any incident reports other than the one associated with the Overton incident.

2. **Date of manufacture of the Decedent's SnugaMonkey Sleeper** – The Letter provided the Date Code on Decedent's SnugaMonkey Sleeper and requested that Mattel provide the date of manufacture of Decedent's SnugaMonkey Sleeper. On November 21, 2019 Plaintiffs provided Defendants with a corrected Date Code via email, stating the there was a typographical error in the Date Code contained in the Letter. As stated in Defendants' response to Plaintiffs' email, Defendants are working on identifying the date of manufacture using the corrected Date Code provided on November 21, 2019 and will provide that information promptly to Plaintiffs upon Defendants' receipt of that date.

3. **Request Nos. 3 and 4** – Plaintiffs seek additional documents related to recall announcements and media statements. Defendants will supplement their production with additional responsive, non-privileged documents as stated in its Response to RFP No. 3 and 4, and will produce as many of these supplemental documents as possible by Wednesday, November 27, 2019, and will supplement this production by December 6, 2019, as needed. Defendants are producing these documents without waiving their objections, and preserving their arguments as to the admissibility of any documents associated with the Recall and Safety Alert, which occurred over a year after the date of the Overton incident.

4. **Request Nos. 7 and 8** – Plaintiffs seek engineering change notices and specifications concerning or related to all models of the Rock n' Play Sleeper over a more than ten (10) year period. Engineering documents for numerous models of the Rock n' Play Sleeper, including models not at issue in this case have been produced as part of the parties' agreement that Defendants produce all documents produced in the *Goodrich* and *Torres* cases in lieu of conducting ESI searches. In addition, Defendants have produced the key design documents known as the Product Requirement Document ("PRD") for the Rock 'n Play Inclined Sleeper at issue in the Overton case. This can be found at Mattel-OV0007542 – 0007570. Defendants have further produced with its First Production, without waiving their objection to admissibility, the Quality Standard Operating Procedures ("QSOP's") for the instructions, warnings and labeling from 2008 through 2016, and any changes made are self-evident. Accordingly, to the extent there are any "change notices" – assuming Defendants' understanding of that vague and ambiguous term aligns

*Overton, et al. vs. Mattel, Inc. and Fisher-Price, Inc.*
November 23, 2019
Page 4

with Plaintiffs' – they have already been produced subject to Defendants' objection to admissibility.

      Finally, Defendants are in the process of carefully reviewing Plaintiffs' discovery responses and the documents produced, and there are issues and concerns which we will be addressing in a subsequent letter. In the meantime, please do not hesitate to reach out should you have any questions about the foregoing response, and we are happy to do a call with you.

      Cordially,

      Stephen T. Fowler

cc:    Lori G. Cohen, Esq.
       Emily H. Bryan, Esq.

*ADMIN 36194309v1*



Stephen T. Fowler
1 202.530.8587
1 202.261.0462
fowlers@gtlaw.com

November 27, 2019

VIA ELECTRONIC MAIL
Michael G. Phelan, Esq.
Jonathan M. Petty, Esq.
Brielle M. Hunt, Esq.
PHELAN PETTY, PLC
6641 West Broad Street,
Ste 406
Richmond, VA  23230
mphelan@phelanpetty.com

VIA ELECTRONIC MAIL
Jan V. Hinson, Esq.
LAW OFFICES OF JAN V. HINSON, P.C.
11175 Cicero Drive
Ste 100
Alpharetta, GA 30022
jan@janhinsonlaw.com

Re:    *Overton, et al. vs. Mattel, Inc. and Fisher-Price, Inc.*

Dear Counsel:

In further response to Plaintiffs' letter of November 20, 2019, Defendants provide the following information about the specific Requests identified in the Letter as follows:

1. **Request No. 13** – Defendants have confirmed that all reports involving allegations of a fatality involving a Rock 'n Play Sleeper that Defendants were aware of before the December 22, 2017 incident alleged in this case (the "Event") – with the exception of one (1) additional report which has been identified and will be produced next week – were produced to Plaintiffs in Defendants' first production of documents.  That production included all CPSC Epidemiologic Investigation Reports (EIR), Matter Detail Reports, and Case History Reports. The Defendants will produce the one additional EIR mentioned above without waiving their objections to the admissibility of any of these reports or any other documents related to other alleged incidents. Defendants deny that any of the allegations described in these reports were caused by the Rock 'n Play Sleeper or the Defendants in any way or that the other alleged incidents are substantially similar to the Event.

2. **Date of manufacture of the Decedent's SnugaMonkey Sleeper** – Defendants have investigated the code provided by Plaintiffs and state that the product at issue was manufactured on or about January 2, 2015.

3. **Request Nos. 3 and 4** – Defendants will produce the non-privileged documents concerning the voluntary recall and Safety Alert identified by Defendants in their Responses to RFP Nos. 3 and 4, subject to and without waiving their objections. Defendants are in the process of bates labeling these documents and they will be produced to Plaintiffs by December 5, 2019.

*Overton, et al. vs. Mattel, Inc. and Fisher-Price, Inc.*
November 27, 2019
Page 2

      4.    **Request Nos. 7 and 8** – Defendants have further considered Plaintiffs' request for all engineering "change notices" and specifications concerning or related to all models of the Rock n' Play Sleeper over a period of more than ten years. Pursuant to the Parties' discovery plan, Defendants have produced extensive design specifications, engineering and testing documents, and labeling and consumer instructions spanning from 2008 through 2016.  Although the thousands of documents produced may not cover every model of the Rock 'n Play Sleeper sold over the past ten years, Defendants have produced the relevant documents for the model at issue in this case.  Plaintiffs are aware that the differences among the other various models of the Rock 'n Play Sleeper are either largely cosmetic in nature or provide additional functions, like the Smart Connect and auto rock features, which are not relevant to Plaintiffs' claims in this case.  Further, Plaintiffs' request set forth in the letter of November 20, 2019 is inconsistent with the agreed upon Discovery Plan and disproportionate to the claims in this case.

      Please do not hesitate to reach out should you have any questions about the foregoing response, and we are happy to do a call with you.

      Cordially,

      Stephen T. Fowler

cc:    Lori G. Cohen, Esq.
       Emily H. Bryan, Esq.

*ADMIN 36202621v2*